M. W. Primm and Gertrude N. Primm, Husband and Wife v. Commissioner.
M. W. Primm & Gertrude N. Primm v. Commissioner
Docket No. 107802.
United States Tax Court
1945 Tax Ct. Memo LEXIS 282; 4 T.C.M. (CCH) 271; T.C.M. (RIA) 45078; February 28, 1945
*282 Thomas E. Elcock, Esq., and H. C. Castor, Esq., 503 Schweiter Bldg., Wichita, Kan., for the petitioners. W. Frank Gibbs, Esq., and James J. Waters, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: Petitioners contest income tax deficiencies and a 50 percent fraud penalty thereon asserted against them for the years 1936 and 1937. The amounts in issue are as follows: Year
Deficiency
50% Penalty
1936
$ 479.98
$ 239.99
1937
4,148.29
2,074.15
$4,628.27
$2,314.14
Respondent determined that petitioner, M. W. Primm, during the years in question, was owner of a construction equipment business operated under the name of Mid-Central Construction Company and/or Frank G. Furman, Contractor, and taxable on its income; that certain unidentified bank deposits also represented income to Primm; and that his failure to report such items of income for each of the two years involved was fraudulent and with intent to evade tax. These are the only questions presented for our determination. Certain minor adjustments made by respondent for 1936 are not contested by petitioner and will be given effect under Rule 50. *283 Findings of Fact Petitioners are husband and wife. During the years involved they resided in Wichita, Kansas, and their returns for those years were filed with the collector for the district of Kansas at Wichita. The statutory notice of deficiency in this proceeding was mailed March 13, 1941. The parties are agreed that petitioner Gertrude N. Primm had no knowledge of any of the transactions involved in this controversy. "Petitioner," as hereafter used, refers solely to M. W. Primm. Petitioner was born and raised in the State of Kansas and, since 1911, he and his brother have been engaged as partners in the mercantile business, owning general stores in three small towns of Kansas. Petitioner operated a store at Harper, Kansas. Petitioner served two terms as a representative in the Kansas legislature, having been elected in 1932 and again in 1934. He has a good reputation in the communities where he has resided, and is regarded by his bank at Wichita as "worthy of credit." From July 1935 through June 1938 petitioner was District Director of the Works Progress Administration with his office at Wichita. In the fall of 1935, State Senator Price and C. M. Fitzwilliam introduced Frank *284 G. Furman to the petitioner, and Fitzwilliam requested that Furman be hired as a Works Progress Administration engineer, which was done. Petitioner became quite friendly with Furman. While Furman was employed by the WPA, petitioner, Furman, Leo Alberding (also a WPA engineer), Fitzwilliam, and others, frequently discussed the advisability of forming an organization through which they would furnish construction equipment under rental contracts for use on WPA projects. Thereafter it was learned that under WPA regulations persons employed by the WPA could not be parties to such contracts, and the proposal was dropped. Sometime in 1936, probably in June, it was learned that Furman owned some equipment which was then being used, in another's name, on a WPA project. Petitioner reminded Furman of the WPA regulations, whereupon Furman elected to resign from his WPA job, rather than dispose of the equipment, and to devote his time exclusively to the operation of an equipment business. The business was carried on in the name of Frank G. Furman, Contractor and/or the Mid-Central Construction Company. Contracts were entered into with the WPA in Furman's name, as then required by the WPA rather *285 than in the company name. Furman borrowed money from petitioner on several occasions during 1936 and 1937 to assist in the operation of the business. This money was at first procured in small amounts and notes were given as security. It was used for various purposes, to meet equipment payments, "gas bills, freight bills, or labor bills," or whatever happened to be the current obligation. As time went on and the equipment business grew and became more involved, Furman repaid Primm in part and borrowed from him other and larger amounts. In the majority of cases no notes or other security were given. The parties "would just set it down on a piece of paper." Furman was to pay interest at 6 percent on the money borrowed. No interest payments were made during the years in question. The Mid-Central equipment was all mortgaged to secure the purchase price. Primm thought the business looked "pretty good," and continued to advance money to Furman until he was in so deep he deemed it necessary to advance further sums to prevent foreclosure of the equipment mortgages and thereby loss of the amounts already loaned Furman. Primm, also, on several occasions furnished or procured money for Furman *286 to be used as deposits or bid checks which were required in lieu of bonds when Mid-Central bid for contracts with the State and counties of Kansas. In some cases Primm borrowed the funds or extended his credit as guarantor or endorser. As Furman repaid the loans or returned the bid checks to Primm, Primm would deposit them in his bank account. In the latter part of 1937 Furman and M. W. Lonnecker formed a partnership under the name of Kansas Machinery Company to engage in the selling of machinery, under a floor-plan arrangement, as agents of the Austin-Western Company. This partnership lasted only about ninety days. Petitioner was in no way connected with this venture. Late in 1937 Furman and Primm reached an agreement as to the balance due Primm. It was agreed that Primm had made loans to Furman totaling $9,783; that $3,983 had been repaid, leaving a balance of $5,800, and that no interest had been paid on the loans. Primm was at that time given an unsigned memorandum to this effect in Furman's handwriting. Early in 1938 Primm, Fitzwilliam and Furman formed a new partnership also under the name of Kansas Machinery Company to take over the business of the first Kansas Machinery *287 Company and to liquidate the used Mid-Central equipment. This partnership was not engaged in the operation of a construction equipment business, nor are its earnings involved in this proceeding. After about 30 days Furman, who was manager, withdrew from the company and, with Primm's assistance got a job in another county. Before he left, he turned over to Primm most of the used Mid-Central machinery, which he said could be sold for more than enough to settle the debt with Primm. Primm doubted that the equipment would sell. It was badly worn, and numerous attempts had been made to dispose of it in eight or ten counties of Kansas. However, Primm accepted the equipment in full discharge of Furman's obligation. The Mid-Central income was returned by "Mid-Central Constr. Co. Frank G. Furman, Owner" for 1936 and by "Frank G. Furman d/b-as-Mid-Central Const. Co." for 1937. The returns were subscribed and sworn to by Furman. Petitioner was in no way interested in or connected with the Construction equipment venture other than as a creditor; he rendered no services on its behalf; he was not familiar with nor had he seen its books and records; he received no income from Frank Furman or the *288 Mid-Central Construction Company during the taxable years 1936 and 1937, and he reported none on his returns. Deposits from sources other than income were made to petitioner's credit in his bank account during the years in question in excess of the so-called "unidentified bank deposits" included by respondent in determining the deficiencies herein. Opinion Respondent here claims (1) that petitioner, during the latter part of 1936 and most of 1937, was the owner of the equipment business operated by Furman as the Mid-Central Construction Company and/or Frank G. Furman, Contractor; that he failed to report any income from this source as his own; and (2) that he had certain unidentified bank deposits during each year which also represent unreported income. Fraud with intent to evade tax, section 293, Revenue Act of 1936, [1] is alleged with respect to each item for each year. *289 Petitioner claims that during the taxable years Furman owned the business; that he, Primm, had no proprietary interest therein, direct or indirect, that at different times during said period, at Furman's request, he lent Furman sums of money aggregating about $10,000 which were to be repaid by Furman, together with 6 percent interest for the use thereof; that $5,800 remained unpaid at the time liquidation of the business was begun late in 1937, when used machinery was turned over to him by Furman in discharge of the balance of the indebtedness; that the claimed unidentified bank deposits were not items of income, and his returns for the years in question were not fraudulent with intent to evade tax. The basic question for our decision is whether Primm had a proprietary interest in the construction equipment business and was thereby required to report its income or a distributive share thereof as his own. If he had no such interest it obviously follows that he could not be guilty of fraud in failing to report its income. On the issue of fraud the burden rests on respondent to prove by clear and convincing evidence not only that petitioner had income he did not report but that his *290 failure to report it was with intent to evade tax. See ; certiorari denied, , and . As District Director of the Works Progress Administration, Primm must have known that any personal business connection he might have, however honestly motivated, with persons or organizations holding or competing for contracts with the WPA would be the subject of criticism and make him the object of suspicion. However, proof of suspicious circumstances or an unwise course of conduct is not sufficient to constitute fraud with intent to evade tax. It is true that in the beginning Primm, Furman and others talked considerably about forming an organization to carry on some of the contract work for WPA. Had the plan then under consideration been consummated and in operation during the taxable years there would have been grounds for respondent's position that Primm was taxable on a share of the profits of the business, if any. The idea, however, was abandoned when it was learned that the WPA regulations prohibited employees to be interested *291 in any WPA contract work. This early talk together with the lapse of time intervening before the hearing doubtless led to confusion in the minds of some of the witnesses and resulted in some apparently conflicting statements of witnesses on both sides as to who, if anyone, was interested in the construction equipment business operated by Frank Furman during the time in question. The record is derived of any evidence that during the years in question Primm received and did not report taxable income from the construction equipment business or that his relationship with Furman was anything more than that of lender and borrower. Primm's categorical denial that he ever "had any interest of any kind or character in the business of Frank Furman while he was operating either under his own name or as Mid-Central Construction Company, or while he was in partnership with Lonnecker," is supported by corroborating evidence. Respondent relies chiefly on two witnesses to establish his charge of fraud. One of them, who played a major part in the selection of personnel in the WPA set-up, testified, in effect, that Furman owned the equipment business; that Primm "backed" Furman by lending him money *292 from time to time; that Primm, when first approached by Furman, refused to make the loans but later agreed to on condition that the witness would contribute his business judgment and assist in procuring contracts for Furman; and that when he, Primm and Furman were discussing Furman's plan to go into business they considered a profit sharing plan under which each would get one-third of the profits. Testimony of respondent's other key witness, who served as a WPA finance officer under Primm, dealt mainly with the discussions which took place within the WPA organization. He said that Furman was to be the manager; that Primm and Furman, in the presence of the witness and others, had discussed the question of salary to be paid Furman after he left the WPA; and that Primm had told the witness that if his dealings with Furman were questioned he could claim that he had lent the money to Furman. This testimony if given full credence could establish no more than that such discussions took place prior to the establishment of the business and that Primm knew that if the proposal were carried out, his dealings might be questioned by the WPA officials. The witness did not profess to know whether *293 the plans discussed were ever given effect, and we are not free to assume they were in view of Primm's flat denial, the uncertainty of the witness with respect to the time and circumstances surrounding the incidents about which he testified, and evidence tending to show a degree of prejudice against Primm on the part of the witness. Other evidence submitted by respondent is corroborative of petitioner's position. For example, the Mid-Central Construction Company income for 1936 was reported by "Mid-Central Constr. Co. Frank G. Furman, Owner" and was subscribed and sworn to by "Frank G. Furman, Owner." The Mid-Central income for 1937 was reported by "Frank G. Furman d/b-as-Mid-Central Const. Co." and was subscribed and sworn to by Furman. Furman's name alone appears on Mid-Central's signature card, produced by respondent from the files of the Fourth National Bank, Wichita, Kansas. Furman and Primm are, of course, the persons best qualified to say what interest, if any, they or either of them had in the equipment business. Primm swears he had no interest in it and never received any of its earnings. Furman swore on his returns that he (Furman) owned the business, and he reported the *294 earnings therefrom as his income. We are convinced after giving due consideration to the testimony of respondent's two key witnesses and to all other facts and circumstances of record that during the period here in question Furman, not Primm, was the owner of the equipment business and that Primm did not share in the profits of the business. Accordingly, we held that respondent has failed to sustain the burden resting on him on the fraud issue and that a preponderance of the evidence shows that the deficiencies insofar as they are based upon income of that business were erroneously determined. Respondent's contention with respect to the unidentified deposits must also fail in view of the evidence that petitioner made various deposits composed of returns of principal more than sufficient in the aggregate to cover the unidentified items in question for each year. Decision will be entered under Rule 50. Footnotes
1. SEC. 293. ADDITIONS TO THE TAX IN CASE OF DEFICIENCY. * * * * *
(b) Fraud. - If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid in lieu of the 50 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.↩